UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| KENDRA M. CLARK, | ) |
| --- | --- |
| Plaintiff, | ) |
| v. | ) Case No. 1:18-cv-356-PPS |
| ANDREW M. SAUL,<br>Commissioner of<br>Social Security, | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Kendra Clark has appealed from an administrative law judge's denial of her application for Social Security disability benefits claiming that the ALJ committed four errors which require a reversal of his decision. But I will limit my discussion to two: whether the ALJ erred in evaluating Clark's subjective symptoms and whether the ALJ properly assessed Clark's fatigue and its impact on her ability to function. Because I find that the ALJ erred in both the subjective symptom analysis and in failing to consider Clark's fatigue, I will reverse the ALJ's decision and remand the case.

**Background**

The ALJ began his analysis by determining that Clark had the severe impairment of multiple sclerosis. [A.R. 18.][1] The ALJ also found that Clark also had a variety of non-severe impairments, including hyperlipidemia, hyperpigmentation with itching

---

[1] The Administrative Record (A.R.) in this case is found at Docket Entry # 10. Citations are to the page number in the lower left-hand corner of the A.R.

consistent with brachioradial pruritus, and diabetes. But the ALJ determined that Clark did not meet any of the applicable social security listings for disability. Specifically, the ALJ examined listing 11.09 (muscular sclerosis) and found that she did not meet or equal the requirements for that listing.

At the next step, the ALJ determined Clark's residual functional capacity (RFC). He determined that Clark should be limited to light work, subject to several additional limitations including occasionally lifting, carrying, pushing and pulling 20 pounds and frequently doing those things with 10 pounds; standing and/or walking 4 hours in an 8-hour workday; sitting 6 hours in an 8-hour workday; frequently climbing stairs and ramps; and never climbing ladders, ropes, or scaffolds. [A.R. 20.] The ALJ also found that she could frequently balance, stoop, kneel, crouch, and crawl, but must avoid concentrated exposure to dangerous machinery and unprotected heights. [*Id.*] The ALJ further limited the work she could perform to simple, routine, and repetitive tasks, as well as a work environment with few or no more than routine workplace changes. [*Id.*]

The ALJ tells me that he based the RFC on his review of Clark's testimony and the submitted evidence. In particular, the ALJ considered Clark's symptoms, the objective medical evidence, and the opinion evidence. [*Id.*] The ALJ's description of the medical evidence can be found in his written decision, [*see* A.R. 20–23], and I need not repeat them here.

The ALJ then posed the RFC and some additional hypothetical questions to a vocational expert (VE) who testified whether such a hypothetical person with Clark's

RFC could likely find gainful employment. The ALJ determined that Clark was unable to perform her past relevant work as an Insurance Policy Writer either as actually performed or as generally performed. [A.R. 24.] However, he found that she could perform the jobs of Routing Clerk, Ticket Taker, or Office Helper, all of which exist in large numbers in the national economy. As a result, the ALJ found that Clark was not disabled within the meaning of the Social Security Act and its regulations.

## Discussion

Let's start with some basics about my role as district court judge in reviewing appeals from the Social Security Administration. The role is a limited one. I do not review evidence and determine whether a claimant is disabled and entitled to benefits. Instead, I review the ALJ's written decision to determine whether the ALJ applied the correct legal standards and whether the decision's factual determinations are supported by substantial evidence. *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012). If substantial evidence supports the ALJ's factual findings, they are conclusive. *Id.*; 42 U.S.C. §405(g).

The Supreme Court has set a low bar for what constitutes "substantial evidence." It means more than a "scintilla" of evidence, but less than a preponderance of the evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Evidence is substantial if a reasonable person would accept it as adequate to support the conclusion." *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). My review is guided by the principle that while "[t]he ALJ is not required to address every piece of evidence or testimony presented, but must provide a 'logical bridge' between the evidence and the conclusions

so that [I] can assess the validity of the agency's ultimate findings and afford the claimant meaningful judicial review." *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010). Given this modest standard, the review is a light one. But, of course, I cannot "simply rubber-stamp the Commissioner's decision without a critical review of the evidence." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). "[T]he decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005) (quoting *Lopez ex rel. Lopez v. Barnhart,* 336 F.3d 535, 539 (7th Cir. 2003)).

Clark argues that the ALJ improperly dismissed her subjective symptoms which she testified to at length and which, if believed, paint a picture of a seriously disabled woman. Historically, courts do not overturn an ALJ's subjective symptom analysis unless it is "patently wrong." *Elder v. Astrue*, 529 F.3d 408, 413–14 (7th Cir. 2008). However, "a failure to adequately explain his or her [subjective symptoms] finding by discussing specific reasons supported by the record is grounds for reversal." *Minnick v. Colvin*, 775 F.3d 929, 937 (7th Cir. 2015) (citing *Terry v. Astrue*, 580 F.3d 471, 47 (7th Cir. 2009)); *Brindisi v. Barnhart*, 315 F.3d 783, 787–88 (7th Cir. 2003); *Salaiz v. Colvin*, 202 F. Supp. 3d 887, 893 (N.D. Ind. 2016). The ALJ's determination "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 2016 WL 1119029, at *9 (Mar. 16, 2016).

Here, the ALJ focused on Clark's daily activities and noted that she reported the ability to perform personal care, prepare meals, complete light household chores, drive, manage finances, socialize with others, and shop. [A.R. 22.] The ALJ concluded that "[t]he function reports generally show that while the claimant reports limitations, she had a fairly active lifestyle that is inconsistent with allegations of disability." [*Id.*] This was misleading. In fact, a review of the function reports would lead a reasonable person to conclude that calling Clark "fairly active" is a stretch.

For starters, the Seventh Circuit has repeatedly instructed ALJs to not place "undue weight" on daily activities when assessing a claimant's subjective symptoms. *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009). Moreover, the ALJ should explain any purported inconsistencies between the claimant's daily activities, subjective complaints, and the medical evidence in the record. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). A rote listing of activities does not cut it. Instead, the ALJ must provide an explanation as to *how* the daily activities are inconsistent with a claimant's subjective symptoms. *Nelson v. Colvin,* 2016 WL 337143, at *6 (N.D. Ill. Jan. 27, 2016) ("The mere listing of daily activities does not establish that a claimant does not suffer disabling pain and is capable of engaging in substantial gainful employment.").

The ALJ here simply catalogued Clark's daily activities, and then summarily concluded that her "active lifestyle" was inconsistent with a finding of disability. The ALJ failed to discuss which symptoms were inconsistent with the daily activities, but more concerningly, the ALJ failed to consider the manner in which the Plaintiff

completed her daily activities. The ALJ cites to four function reports from Clark and her mother to support his findings regarding her daily activities. In those function reports, Clark details her activities of daily living, noting that her fatigue was the most limiting symptom in her daily activities. While Clark stated that she could make her own meals, she reported making "sandwiches, frozen dinners, vegetables, and hamburger helper," and that sometimes she is too tired to cook even those simple meals for herself. [A.R. 269.] Her mother corroborated this, noting that Clark "eats a lot of prepared foods." [A.R. 324.] Clark also noted that although she was capable of socializing on the phone when she feels up to it, she doesn't attend many social functions due to her pain and fatigue. [A.R. 271–72.] She also stated that if she exceeded her limits physically, she would require hours, or even a day of recovery time. [A.R. 272.]

Moreover, while Clark did state that she could perform personal care and light household chores, she also reported that she needed to take frequent breaks and needed to rest in between each activity due to fatigue and pain. [A.R. 297, 299.] Her mother confirmed that Clark needed to take a lot of breaks while doing chores, and that although she attempted to work on chores daily, "it [wa]s never a lot." [A.R. 324.] Clark also reported that she shopped once a week for groceries, but otherwise she had "become a homebody." [A.R. 301.] Her mother stated that "she stays home [and] spends very little time with others." [A.R. 327.] Throughout the function reports, Clark described suffering from insomnia, pain, and fatigue. [A.R. 268, 269, 271, 297–98.] She testified that she is not always able to complete household chores due to fatigue, or if

she is able to complete them, it is not in a timely manner. [A.R. 61–62.] She also testified to lying down most of the day. [A.R. 65.] Her ongoing struggles with fatigue and an inability to sleep are mentioned multiple times throughout the rest of the medical record and support her reports of fatigue. [A.R. A.R. 589–90, 617, 619, 629.] In sum, the function reports paint an entirely different picture than the summary—that Clark enjoys a "a fairly active lifestyle"—painted by the ALJ.

What's more, the ALJ failed to mention how Clark's fatigue interfered with her daily activities. The ability to struggle through daily activities in a limited manner does not necessarily demonstrate that someone can perform full-time work. *See Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) ("The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons … and is not held to a minimum standard of performance, as she would be by an employer.") (collecting cases); *Carradine v. Barnhart*, 360 F.3d 751, 755 (7th Cir. 2004) (revering where the ALJ "failed to consider the difference between a person engaging in sporadic physical activities" and the ability to work full-time). Although the ALJ is not required to mention every piece of evidence in the decision, he must "build an accurate and logical bridge from the evidence to [the] conclusion." *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

The ALJ has failed to build a logical bridge here. Clark's fatigue negatively impacted her ability to complete daily activities, yet the ALJ mischaracterized her

assertions and ignored all evidence regarding her fatigue's impact on her ability to complete her daily activities. The ALJ here both failed to properly discuss which of her symptoms interfered with Clark's ability to perform daily activities and also failed to address the limited manner in which she performed them. Because the ALJ failed to sufficiently articulate his reasoning for dismissing Clark's subjective complaints, remand is appropriate.

Clark then argues that in dismissing her subjective complaints, the ALJ further erred in failing to consider how her fatigue and other non-severe impairments affect her multiple sclerosis. Both fatigue and trouble sleeping are symptoms of MS. 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00 (N)(2). Clark regularly reported trouble sleeping and fatigue to her doctors. [A.R. 21–23, 589–90, 617, 619, 629.] She also testified that the fatigue is there "all of the time," and that she "can't do anything, because … the fatigue is there." [A.R. 51.] While the ALJ mentions Clark's reports of fatigue to her doctors throughout his decision, he fails to properly consider the effects of fatigue on her ability to function. The regulations acknowledge that fatigue is a limiting symptom of MS that must be considered. Specifically, they say:

> Fatigue is one of the most common and limiting symptoms of some neurological disorders, such as multiple sclerosis, post-polio syndrome, and myasthenia gravis. These disorders may result in physical fatigue (lack of muscle strength) or mental fatigue (decreased awareness or attention). When we evaluate your fatigue, we will consider the intensity, persistence, and effects of fatigue on your functioning. This may include information such as the clinical and laboratory data and other objective evidence concerning your neurological deficit, a description of fatigue considered characteristic of your disorder, and information about your functioning. We consider the effects of physical fatigue on your ability to stand up, balance,

> walk, or perform fine and gross motor movements using the criteria described in 11.00D. We consider the effects of physical and mental fatigue when we evaluate your physical and mental functioning described in 11.00G.

20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00(T). The ALJ here failed to properly analyze Clark's fatigue and its effect on her ability to function, despite a record that is replete with references to fatigue as an ongoing symptom.

The Commissioner responds by stating that the ALJ "further considered evidence of fatigue … but he also noted that progress notes described Clark as doing well with medication, with normal examinations and normal cognition." [D.E. 16 at 7.] The Commissioner goes on to claim that the ALJ "further considered plaintiff's continued reports of fatigue, as well as the consultative examiner's description of Plaintiff's MS as 'stabilized with medication' and generally unremarkable physical examinations." *Id.* It is difficult to follow the Commissioner's response. It's true that the ALJ noted Clark's ongoing fatigue. But he failed to analyze it with regards to her ability to function both physically and mentally. While her overall physical symptoms related to her MS (facial numbness, slurred speech, low back pain, etc.) were improved on medication, her fatigue persisted. [A.R. 22.] Both the ALJ and the Commissioner seem to find that Plaintiff's symptom free reports diminish her complaints of fatigue. Yet the fatigue continued to be documented by physicians despite other physical improvements. [A.R. 21–23, 589–90, 617, 619, 629.] The ALJ failed to consider how the fatigue may affect Clark's ability to function both physically and

mentally, even if other physical symptoms of MS were at bay. The ALJ's failure to consider whether the impact of Clark's fatigue on her ability to maintain full-time work requires remand.

In sum, on remand, the ALJ should reevaluate Clark's subjective symptoms and properly analyze the effect of her fatigue on her ability to maintain full-time employment. Because I am remanding this case for the reasons stated above, I need not discuss the remaining issues raised by Clark. She can raise those issues directly with the ALJ on remand.

## Conclusion

For the foregoing reasons, the decision of the ALJ denying Kendra Clark's application for Social Security disability benefits is REVERSED and REMANDED for further proceedings consistent with this opinion.

SO ORDERED on November 6, 2019.

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT